# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.: 07-010 (RMU)** |
| | : | |
| **v.** | : | |
| | : | **MAG. NO.:** |
| **CARLITA JACKSON,** | : | |
| | : | |
| | : | **18 U.S.C. § 1344** |
| **Defendant.** | : | **(Bank Fraud)** |
| | : | |
| | : | |

### UNITED STATES' MEMORANDUM  IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing, recommending that the defendant be sentenced to 6 months of imprisonment, followed by 3 years of supervised release, and an award of $27,567.40 in restitution.  In support thereof, the United States respectfully states the following:

<u>Background</u>

1.     Michael Krier lived at all relevant times in the 1300 block of U Street, N.W., Washington, D.C.   Mr. Krier planned to travel to Europe between late December, 2004, and mid February 2005.  Prior to leaving for his trip, Mr. Krier made arrangements with the defendant, Carlita Jackson, to look after his apartment while he was gone.  Mr. Krier was introduced to the defendant through her mother, who is the receptionist at Mr. Krier's doctor's office.  Mr. Krier had known the defendant's mother in that capacity for several years, and he met with the defendant several times

between November 2004 and December 23, 2004, when he left for Europe. The defendant was to look after Mr. Krier's apartment while he was gone. She was to check his mail and was permitted to stay at Mr. Krier's apartment as she wished during that time period.

2.    After Mr. Krier left for Europe, the defendant obtained checkbooks belonging to Michael Krier that were in his apartment. The checkbooks were for a Suntrust Bank account belonging to Michael Krier (hereinafter, "Mr. Krier's account"). At no time was the defendant an authorized signatory of Mr. Krier's account. After Mr. Krier left on his trip, the defendant forged Mr. Krier's signature and cashed the following checks she made payable to herself from Mr. Krier's account, without proper authorization, between on our about December 23, 2004, and on or about March 15, 2005:

| Date | Check # | Amount |
|------|---------|--------|
| 12/23/2004 | 2031 | $400.00 |
| 12/24/2005 | 2032 | $400.00 |
| 12/25/2004 | 2033 | $1,200.00 |
| 12/27/2005 | 2036 | $900.00 |
| 01/13/2005 | 2037 | $900.00 |
| 01/02/2005 | 2038 | $500.00 |
| 12/29/2004 | 2040 | $1,000.00 |
| 01/04/2005 | 2041 | $465.00 |
| 01/05/2005 | 2044 | $800.00 |
| 01/04/2005 | 2045 | $750.00 |
| 010/8/2005 | 2046 | $900.00 |
| 01/09/2005 | 2047 | $850.00 |
| 01/11/2005 | 2049 | $875.00 |
| 01/12/2005 | 2050 | $750.00 |
| 01/14/2005 | 2051 | $600.00 |
| 01/15/2005 | 2054 | $450.00 |
| 01/15/2005 | 2056 | $250.00 |
| 01/18/2005 | 2057 | $400.00 |
| 01/31/2005 | 2091 | $222.00 |
| 02/04/2005 | 2093 | $850.00 |

| 02/11/2005 | 2095 | $860.00 |
|------------|------|---------|
| 02/03/2005 | 2096 | $975.60 |
| 02/06/2005 | 2097 | $1,925.00 |
| 02/08/2005 | 2098 | $400.00 |
| 03/12/2005 | 2099 | $950.00 |
| 03/07/2005 | 2100 | $800.00 |
| 02/07/2005 | 2101 | $850.00 |
| 02/09/2005 | 2102 | $1,400.00 |
| 02/16/2005 | 2103 | $800.00 |
| 02/11/2005 | 2104 | $875.00 |
| 02/10/2005 | 2105 | $700.00 |
| 02/13/2005 | 2106 | $965.00 |
| 02/14/2005 | 2107 | $705.00 |
| 03/01/2005 | 2109 | $600.00 |
| 03/02/2005 | 2110 | $800.00 |
| 03/03/2005 | 2111 | $870.00 |
| 02/28/2005 | 2113 | $600.00 |
| 03/03/2005 | 2114 | $250.00 |
| 03/10/2005 | 2115 | $950.00 |
| 03/11/2005 | 2116 | $989.00 |
| 02/28/2005 | 2117 | $400.00 |
| 02/28/2005 | 2118 | $975.00 |
| 02/28/2005 | 2119 | $300.00 |

In addition, the defendant forged Mr. Krier signature on check number 2094 from Mr. Krier's account and made it payable to Enterprise Car Rental for the purchase of goods and services from Enterprise, without proper approval from Mr. Krier.

3.     All of the above listed checks from Mr. Krier's account were honored by Suntrust Bank. At all relevant times, Suntrust Bank was a financial institution insured by the Federal Deposit Insurance Corporation. According to Mr. Krier, the issuance and cashing of the above listed checks resulted in the theft of $27,567.40 from his Suntrust account.

-3-

4.      Upon discovering that money was missing from his account and that the defendant had issued checks fraudulently from his account, Mr. Krier sent an email to the defendant demanding that she pay him the money she had stolen from his account.  By email response, the defendant requested to make payment arrangements with Mr. Krier.

## Plea Agreement

5.      To her credit, the defendant accepted responsibility for her conduct at the inception of this case and pled guilty on March 8, 2007, pursuant to the government's plea offer, to a one-count information charging her with Bank Fraud, in violation of Title 18, United States Code, Section 1344.  In the plea agreement, the defendant agreed she is accountable for the theft of $27,567.40, and agreed to pay restitution in that amount to the victim, Michael Krier.  The government agreed that the defendant would not be further prosecuted criminally by the United States Attorney's Office for the conduct set forth in the Statement of Offense.  The government also agreed not to oppose a sentence of incarceration at the low end of the defendant's applicable range under the guidelines and policies promulgated by the United States Sentencing Commission, Guidelines Manual (hereinafter "Sentencing Guidelines" or "U.S.S.G.").

## Statutory Penalties

6.      The statutory maximum sentence that can be imposed in this case is thirty (30) years imprisonment and a fine up to $1,000,000, pursuant to Title 18, United States Code, Section 1344; a period of supervised release of not more than five years, pursuant to Title 18, United States Code, Section 3583; a special assessment of $100, pursuant to Title 18, United States Code, Section 3013; an order of restitution; and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.

## Sentencing Guidelines

7.      Under the Sentencing Guidelines, based on the information set forth in the Presentence Investigation Report ("PSR"), the defendant's total offense level is 9.   U.S.S.G. §§2B1.1(a)(1), 2B1.1(b)(1)( C), 3E.1.1(a).   The defendant has a criminal history of two points, placing her in criminal history Category Two. U.S.S.G. Chapter 5, Part A.   Accordingly, the defendant's applicable range of incarceration is 6 to 12 months of imprisonment. U.S.S.G. Chapter 5, Part A.  The Sentencing Guidelines also provide for a period of supervised release of at least three, but not more than five years.   U.S.S.G. §5D1.2(a)(1).   The fine range under the Sentencing Guidelines is $1,000 to $1,000,000.   U.S.S.G. §5E1.2(c)(4).

## Sentencing Recommendation

8.      The government recommends that the defendant be sentenced to 6 months incarceration, followed by 3 years of supervised release.  The government's recommendation, which falls at the low end of the defendant's applicable Sentencing Guidelines range, is reasonable.   In United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment. The Court invalidated the statutory provision that made the Guidelines mandatory:  Title 18, United States Code, Section 3553(b)(1).   Booker, 124 S. Ct. at 764.  The Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime.  Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines.  See 18 U.S.C. § 3554(c)(2).

The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Booker</u>, 124 S. Ct. at 766.

9.    In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u>, 124 S. Ct. at 767 (citing 18 U.S.C.A. §§ 3553(a)(4)&(5) (Supp. 2004)).   In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se.  Not only is a sentence within the Guidelines range presumptively reasonable, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.  A sentence of 6 months incarceration, within the defendant's Sentencing Guidelines range, satisfies this goal.

10.    A sentence within the Sentencing Guideline range is not only presumptively reasonable for the reasons outlined above, but it is reasonable and appropriate for this defendant based on the facts of this case, when viewed in conjunction with the defendant's criminal history and willingness to accept responsibility at an early stage in the case.  The recommended sentence of 6 months imprisonment is further supported by the factors to be considered by courts as articulated in 18 U.S.C. § 3553(a).  This provision provides, in pertinent part, that when fashioning a sentence, courts should consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement issued by the Sentencing Commission . . . [;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). None of the factors enumerated in Section 3553(a) suggest an appropriate reason or extraordinary circumstance for the Court to depart from the recommended range or to impose a non-guidelines sentence.

11. Regarding the nature and seriousness of the offense, the defendant stole over $27,500

from Mr. Krier while she was left in a position of trust to guard over his home. Moreover, the theft in this case did not result from one anomalous incident. The defendant's scheme involved her cashing over 40 checks from Mr. Krier's account over the course of several months. The defendant's actions were calculated and premeditated, and she had ample opportunity to reconsider her conduct. Instead, she took advantage of a person who trusted her, and engaged in numerous fraudulent acts by repeatedly forging the victim's signature and cashing checks from his account.

12.    Making the offense even more egregious, the defendant conduct in this case is consistent with her prior criminal record. The defendant has been previously convicted twice for fraud related activity. In February 2000, the defendant was convicted of uttering in D.C. Superior Court case number 1999-FEL-0302, for an incident that occurred in January 1999. The defendant was placed on probation for two years for the offense. In addition, in June 2000, the defendant was convicted of credit card theft in Arlington Virginia criminal case number CR425-00, and was also placed on probation for another two-year period.

13.    The need for deterrence and to protect the public also support the government's recommended sentence of 6 months incarceration, plus an award of restitution in the amount of $27,567.40. The need for deterrence requires a sentence that does more than simply require that the defendant pay back the money she stole.[1] The crime committed here is a crime that required

---

[1] Title 18, United States Code, Section 3663A provides for mandatory restitution to the victims of certain crimes, including offenses committed, as in this case, against property committed by fraud or deceit. 18 U.S.C. §3663A(c)(1)(A)(ii). Pursuant to the plea agreement, the defendant has agreed not to oppose an award of restitution in the amount she stole, $27,567.40. It should be noted further that the victim in this case, Michael Krier, is not primarily concerned with having Ms. Jackson incarcerated and has indicated that he would prefer that the Court impose a sentence that would best enable the defendant to pay back the amount of money stolen from him.

deliberation and reflection by the defendant.  Under such circumstances, an individual has the ability to assess the consequences and likelihood that she will get caught and to decide whether she should go forward with committing the crime.  If an individual contemplating such conduct knew that the only penal consequence she would face if caught were probation and an award of restitution, after stealing thousands of dollars, the individual would have very little, if any, incentive not to commit the crime.  The worse case scenario would be that she would have to return what did not belong to her in the first place.  The public interest and need for deterrence support the imposition of a jail sentence to prevent the defendant, as well as others in the community, from committing crimes of this magnitude in the future.

14.    The defendant's record during past probationary periods also shows that her rehabilitative needs would be best served by a period of incarceration.  The defendant was placed on probation after both of her prior convictions.  In D.C. Superior Court case number 1999-FEL-0302, she was ordered to pay restitution in the amount of $4,100, but paid only $310.  Her probationary period in that case expired unsuccessfully in February 2002.  Moreover, by committing the offense in the instant case, the defendant has made clear that she did not learn the appropriate lessons from her two previous criminal convictions and periods of probation.  Clearly, the past probationary periods were ineffective in reforming the defendant's behavior, and the Court has no reason to believe that another probationary period would succeed in preventing the defendant from committing future offenses.  Rather, a term of imprisonment is necessary to inform the defendant of the seriousness of her criminal conduct and the community's unwillingness to condone such behavior.

WHEREFORE, based upon the above discussion, and the information reflected in the presentence report, the United States respectfully recommends a period of 6 months of incarceration, followed by a 3 year period of supervised release, and an award of $27,567.40 in restitution.



Respectfully,

JEFFREY A. TAYLOR
United States Attorney


By: _____/s/_____
PERHAM GORJI
ASSISTANT UNITED STATES ATTORNEY
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4233
Washington, D.C. 20530
Phone: (202) 353-8822
Fax: (202) 616-3782




CERTIFICATE OF SERVICE

I hereby certify that a copy of the United States' Memorandum in Aid of Sentencing was served by first class mail upon counsel of record for the defendant, Rita Bosworth, Esq., Federal Public Defender, 625 Indiana Avenue, NW, Washington, DC 20004, this 14th day of May, 2007.


_____/s/_____
PERHAM GORJI, AUSA

-10-